Daniel A. Crawford (SBN 187807)
CRAWFORD LAW GROUP
15303 Ventura Blvd., 9th Floor
Sherman Oaks, California 91403
Tel: (818) 935-6568
Fax: (818) 728-6747
dac@crawfordlawgroup.com

Attorneys for Plaintiff
UNITED STATES *ex rel.*
Dr. Jeannette Martello

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORIA

1

**COMPLAINT**

| | |
|---|---|
| 1 | UNITED STATES of AMERICA *ex rel,* Dr. Jeannette Martello |
| 2 | Plaintiff, |
| 3 | v. |
| 4 | |
| 5 | KAMALA HARRIS, LUCINDA EHNES, MICHELLE ROUILLARD, ELAINE PANIEWSKI, GARY BALDWIN, |
| 6 | EDWARD HEIDIG, DREW BRERETON, ANTHONY MANZANETTI, CAROL |
| 7 | VENTURA, KRISTIN DOOR, MARTA GREEN, BRENT BARNHART, |
| 8 | CHRISTOPHER LEE, SONIA R. FERNANDES, JAMES WILLIS, TERESA |
| 9 | RODRIGUEZ, DEBRA DENTON, HOLLY PEARSON, MICHAEL |
| 10 | ROUZER, SANDRA PEREZ, RICK MARTIN, LYNNE RANDOLPH, |
| 11 | DENNIS BALMER, DEBBIE MCKINNEY, MICHAEL |

Case No.

COMPLAINT FOR DAMAGES, STATUTORY PENALTIES AND EQUITABLE RELIEF FOR;
1. VIOLATIONS OF FALSE CLAIMS ACT—Presentation of False Claims;
2. VIOLATIONS OF FALSE CLAIMS ACT—Making or Using False Record or Statement to Cause False Claim to be Presented;
3. PAYMENT BY MISTAKE OF FACT;
4. UNJUST ENRICHMENT; and,
5. RECOUPMENT OF OVERPAYMENTS

[31 U.S.C. § 3729, *et seq.*]

Jury Trial Demanded

UNITED STATES of AMERICA *ex rel,*
Dr. Jeannette Martello

                    Plaintiff,

          v.

KAMALA HARRIS, LUCINDA EHNES, MICHELLE ROUILLARD, ELAINE PANIEWSKI, GARY BALDWIN, EDWARD HEIDIG, DREW BRERETON, ANTHONY MANZANETTI, CAROL VENTURA, KRISTIN DOOR, MARTA GREEN, BRENT BARNHART, CHRISTOPHER LEE, SONIA R. FERNANDES, JAMES WILLIS, TERESA RODRIGUEZ, DEBRA DENTON, HOLLY PEARSON, MICHAEL ROUZER, SANDRA PEREZ, RICK MARTIN, LYNNE RANDOLPH, DENNIS BALMER, DEBBIE MCKINNEY, MICHAEL MCCLELLAND, KYLE MUNSON, ANDREW GEORGE, ROBERT MCKIM BELL, MAUREEN MCKENNAN, MICHAEL CLEARY, TIM LEBAS, CHARLAINE HAMILTON, BARBARA GARRETT, PETER LEE, DESI MALONE, KATIE MARCELLUS, DAVE JONES, TOBY DOUGLAS, DAVID MAXWELL-JOLLY, JULI BAKER, DAVID PANUSH, OSCAR HIDALGO, JANETTE CASILLAS, PATRICIA POWERS, DIANA S. DOOLEY, KIMBERLY BELSHE, ALEX KEMPER-MCCALL, PERRY KUPFERMAN, ALI ZAKERSHAHRAK, MARSHA SEELEY, KIM MORIMOTO, BRUCE HINZE, PAUL FEARER, SUSAN KENNEDY, ROBERT ROSS, GENOVEVA ISLAS, MARTY MORGENSTERN, ART TORRES, CALIFORNIA HEALTH BENEFIT EXCHANGE, and DOES 1-100, inclusive,

                    Defendants.

2
**COMPLAINT**

Qui Tam Plaintiff-Relator Dr. Jeannette Martello, on behalf of the United States, hereby alleges as follows:

## NATURE OF THE ACTION

1.     Qui Tam Plaintiff-Relator Dr. Jeannette Martello brings this action on behalf of the United States to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, and to recover damages and other monetary relief under the common law or equitable theories of unjust enrichment, payment by mistake of fact and recoupment.

2.     These claims are based upon the defendants submission of applications and claims for grant monies from the United States, which applications were based on defendants' representations and certifications that their conduct, published regulations, and the laws of the State of California were in compliance with the laws of the United States.  Those representations and certifications were untrue and defendants knew them to be untrue at the time.

## JURISDICTION

3.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1345, on the basis of issues of federal law presented under the False Claims Act, 31 U.S.C. § 3729 *et seq.*  Supplemental jurisdiction exists to entertain the common law and equitable claims under 28 U.S.C. § 1367(a).

4.     Personal jurisdiction over each of the individual defendants exists pursuant to 31 U.S.C. 3732(a), in that they reside and transact business in the State of California, within the territory of the judicial district of the above-entitled court, and a major portion of the acts complained of which are proscribed by 31 U.S.C. § 3729 occurred in this district.

## VENUE

5.     Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 based on the fact that the defendants can be found in, reside in, transact business

3

**COMPLAINT**

in, or have performed acts proscribed by 31 U.S.C. § 3729 *et seq.,* in this district.

## PARTIES

6.      Qui Tam Plaintiff-Relator Dr. Jeannette Martello is a resident and citizen of the United States and the State of California.  She is a physician licensed to practice in the State of California.  She is a taxpayer of the state and the United States.  Dr. Martello brings this action on behalf of the United States pursuant to 31 U.S.C. § 3730(b)(2).

7.      Defendant Kamala Harris is an individual resident of the State of California.

8.      Defendant Lucinda Ehnes is an individual resident of the State of California.

9.      Defendant Michelle Rouillard is an individual resident of the State of California.

10.      Defendant Elaine Paniewski is an individual resident of the State of California.

11.      Defendant Gary Baldwin is an individual resident of the State of California.

12.      Defendant Edward Heidig is an individual resident of the State of California.

13.      Defendant Drew Brereton is an individual resident of the State of California.

14.      Defendant Anthony Manzanetti is an individual resident of the State of California.

15.      Defendant Carol Ventura is an individual resident of the State of California.

16.      Defendant Kristin Door is an individual resident of the State of California.

17.      Defendant Marta Green is an individual resident of the State of California.

4

**COMPLAINT**

18.     Defendant Brent Barnhart is an individual resident of the State of California.

19.     Defendant Christopher Lee is an individual resident of the State of California.

20.     Defendant Sonia R. Fernandes is an individual resident of the State of California.

21.     Defendant James Willis is an individual resident of the State of California.

22.     Defendant Teresa Rodriguez is an individual resident of the State of California.

23.     Defendant Debra Denton is an individual resident of the State of California.

24.     Defendant Holly Pearson is an individual resident of the State of California.

25.     Defendant Michael Rouzer is an individual resident of the State of California.

26.     Defendant Sandra Perez is an individual resident of the State of California.

27.     Defendant Rick Martin is an individual resident of the State of California.

28.     Defendant Lynne Randolph is an individual resident of the State of California.

29.     Defendant Dennis Balmer is an individual resident of the State of California.

30.     Defendant Debbie McKinney is an individual resident of the State of California.

31.     Defendant Michael McClelland is an individual resident of the State of California.

32.     Defendant Kyle Munson is an individual resident of the State of

5

**COMPLAINT**

California.

33.    Defendant Andrew George is an individual resident of the State of California.

34.    Defendant Robert McKim Bell is an individual resident of the State of California.

35.    Defendant Maureen McKennan is an individual resident of the State of California.

36.    Defendant Michael Cleary is an individual resident of the State of California.

37.    Defendant Tim LeBas is an individual resident of the State of California.

38.    Defendant Charlaine Hamilton is an individual resident of the State of California.

39.    Defendant Barbara Garrett is an individual resident of the State of California.

40.    Defendant Peter Lee is an individual resident of the State of California.

41.    Defendant Desi Malone is an individual resident of the State of California.

42.    Defendant Katie Marcellus is an individual resident of the State of California.

43.    Defendant Dave Jones is an individual resident of the State of California.

44.    Defendant Toby Douglas is an individual resident of the State of California.

45.    Defendant David Maxwell-Jolly is an individual resident of the State of California.

46.    Defendant Juli Baker is an individual resident of the State of California.

47.    Defendant David Panush is an individual resident of the State of California.

48.    Defendant Oscar Hidalgo is an individual resident of the State of

6

**COMPLAINT**

California.

49.       Defendant Janette Casillas is an individual resident of the State of California.

50.       Defendant Patricia Powers is an individual resident of the State of California.

51.       Defendant Diana S. Dooley is an individual resident of the State of California.

52.       Defendant Kimberly Belshe is an individual resident of the State of California.

53.       Defendant Alex Kemper-McCall is an individual resident of the State of California.

54.       Defendant Perry Kupferman is an individual resident of the State of California.

55.       Defendant Ali Zakershahrak is an individual resident of the State of California.

56.       Defendant Marsh Seeley is an individual resident of the State of California.

57.       Defendant Kim Morimoto is an individual resident of the State of California.

58.       Defendant Bruce Hinze is an individual resident of the State of California.

59.       Defendant Paul Fearer is an individual resident of the State of California.

60.       Defendant Susan Kennedy is an individual resident of the State of California.

61.       Defendant Robert Moss is an individual resident of the State of California.

62.       Defendant Genoveva Islas is an individual resident of the State of California.

**COMPLAINT**

63.      Defendant Marty Morgenstern is an individual resident of the State of California.

64.      Defendant Art Torres is an individual resident of the State of California.

65.      Defendant California Health Benefit Exchange is a public entity not associated with any state agency which is governed by a Board and not by the state. This defendant does not receive any state funds.

## THE FALSE CLAIMS ACT

66.      The False Claims Act, 31 U.S.C. § 3729, *et seq.*, states, in relevant part:

**(a) Liability for certain acts.–**

**(1) In general.**–Subject to paragraph (2), any person who–
**(A)** knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
**(B)** knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim
*   *   *
…is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410 [FN1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

**(b) Definitions.**–For purposes of this section–
**(1)** the terms "knowing" and "knowingly" –
**(A)** mean that a person, with respect to information–
**(i)**   has actual knowledge of the information;
**(ii)**  acts in deliberate ignorance of the truth or falsity of the information; or
**(iii)** acts in reckless disregard of the truth or falsity of the information; and
**(B)** require no proof of specific intent to defraud;

31 U.S.C. § 3729.

67.      The False Claims Act permits Qui Tam Plaintiff-Relator to maintain this action on behalf of the United States, as follows:

8

**COMPLAINT**

**(b) Actions by private persons.**

> **(1)** A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government.

31 U.S.C. § 3730(b).

## THE AFFORDABLE CARE ACT AND GRANTS THEREUNDER

68.     On March 30, 2010, the Federal government fully enacted the Patient Protection and Affordable Care Act ("Affordable Care Act" or "ACA"). See, Public Law 111-148. The ACA, amongst many other things, establishes a Federal mandate that all citizens obtain healthcare coverage. One way citizens may meet this mandate is through an employer's health benefits plan which provides healthcare coverage meeting a minimum health coverage standard. Another way to comply for an individual to purchase a health insurance plan which covers "essential health benefits" (hereinafter "EHB") as defined under the ACA and its implementing regulations. Policies or plans meeting these requirements may be purchased from private health plans/insurers operating on an "Exchange." Under the ACA, Americans meeting certain income threshold requirements are eligible for United States taxpayer-funded subsidies to offset the cost of purchasing health insurance through a state-operated exchange such as Covered California. See, Public Law 111-148 at § 1311. Only health plans sold through a state exchange are eligible for Federal subsidies to offset the purchase price, and only plans which provide all EHB may be sold through a state exchange.

69.     Section 1311 of the Affordable Care Act established Federal assistance to the states to establish health benefit exchanges through planning and establishment grants.  Section 1311(a)(1).

70.     To date, the California Health Benefit Exchange has received over $

1,065,683,056 in Section 1311(a)(1) planning and establishment grants: $673,705,358 awarded on January 17, 2013; $155,076,686 awarded on January 22, 2014; $39,421,383 awarded on August 12, 2011; $196,479,629 awarded on June 29, 2012.

71.     The first establishment grant was for $1,000,000, and was awarded to the administrator, California Health and Human Services Agency on behalf of the California Health Benefit Exchange.

72.     The opportunity for the establishment grant was entitled the State Planning and Establishment Grants for the Affordable Care Act. The offering agency was the Office of Consumer Information & Insurance Oversight. The CFDA Number was 93.525. The CFDA Description was State Planning and Establishment Grants for the Affordable Care Act. The Opportunity Number was IE-HBE-10-001 and the competition ID number was IE-HBE-10-001-011777. The opportunity open date was July 29, 2010 and the opportunity close date was listed as September 1, 2010. The application was listed as received on August 31, 2010. The agency contact was listed as Donna Laverdiere with the Office of Consumer Information & Insurance Oversight with the Department of Health and Human Services. The application filing name was called the CA Exchange Planning Grant. Multiple mandatory documents were included for submission of the Federal grant including the mandatory document, Application for Federal Assistance, SF-424 form.

73.     The California Health and Human Services Agency submitted this first Federal grant application. The contact person was listed as policy analyst, Defendant Alex Kemper-McCall. The descriptive title of the applicant's project was listed as the California Health Benefit Exchange Planning Grant.

74.     On the aforementioned 2010 Federal grant application, Defendant Belshe expressly certified and gave express assurances, under paragraph 18, that she would "comply with all applicable requirements of all other Federal laws executive orders, regulations, and policies governing this program." On August 31, 2010, Defendant

10

**COMPLAINT**

Alex Kemper-McCall indicated that he was the authorized representative "authorized certifying official" directly underneath these assurances that appeared on mandatory document "Standard Form 424B (Rev. 7-97) Back."

75.    On this Federal grant application, both Defendants Kimberly Belshe and Alex Kemper-McCall gave express certifications to the Federal government on Application for Federal Assistance SF-424, Section 21:

> *By signing this application, I certify (1) to the statements contained in the list of certifications**and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject them to criminal, civil or administrative penalties.  (U.S.Code, Title 218, Section 1001).

76.    In response to these express certifications and assurances given to the Federal government to comply with "Federal laws executive orders, regulations, and policies governing this program", $1,000,000 in Federal ACA funds was awarded on September 30, 2010.

77.    Subsequent Federal grant applications were submitted to the Federal government for Federal ACA funds.  The next grant was submitted by the administrator, the California Health Benefit Exchange with an application due date of June 30, 2011 and an award date of August 12, 2011.  The Federal grant package, included the mandatory document form SF-424 (with express certifications and express assurances), which was submitted to the U.S. Department of Health and Human Services and Office of Consumer Information and Insurance Oversight.  The grant project narrative was entitled California Application Level I Establishment Grant and Cooperative Agreement to Support Establishment of State-Operated Health Insurance Exchanges.  The funding opportunity number was listed as IE-HBE-11-004

with a CFDA number of 93.525.  The period of performance was listed on the Federal grant application as July 1, 2011 to June 30, 2012.  The applicant was listed as the California Health Benefit Exchange with a DUNS # of 9685112090000.  The primary contact person was listed as Defendant Alex Kemper-McCall.  This Federal grant application contained express certifications and express assurances to "comply with all applicable requirements of all other Federal laws executive orders, regulations, and policies governing this program."  The express certification included the statement:

> *By signing this application, I certify (1) to the statements contained in the list of certifications**and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject them to criminal, civil or administrative penalties.  (U.S.Code, Title 218, Section 1001).

78.     In response to the submitted express certifications and express assurances given to the Federal government to comply with "Federal laws executive orders, regulations, and policies governing this program",  $39,421,383 in Federal ACA funds were awarded on August 12, 2011.

79.     The next grant was submitted by the administrator, the California Health Benefit Exchange with an application due date of June 29, 2012 and an award date of August 23, 2012.  The grant project narrative was entitled California Application Level I Establishment Grant (1.2) and Cooperative Agreement to Support Establishment of State-Operated Health Insurance Exchanges.  The Federal grant package, included the mandatory document form SF-424 (with express certifications and express assurances), which was submitted to the U.S. Department of Health and Human Services and Office of Consumer Information and Insurance Oversight.  The funding opportunity number was listed as IE-HBE-11-004 with a CFDA number of 93.525.

**COMPLAINT**

The period of performance was listed on the Federal grant application as August 15, 2012 to June 30, 2013.  The applicant was listed as the California Health Benefit Exchange with a DUNS # of 9685112090000.  The primary contact person was listed as Peter Lee.  This Federal grant application contained express certifications and express assurances to "comply with all applicable requirements of all other Federal laws executive orders, regulations, and policies governing this program."  The express certification included the statement:

> *By signing this application, I certify (1) to the statements contained in the list of certifications**and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject them to criminal, civil or administrative penalties.  (U.S.Code, Title 218, Section 1001).

80.      In response to the submitted express certifications and express assurances given to the Federal government to comply with "Federal laws executive orders, regulations, and policies governing this program", $ 196,479,629 in Federal ACA funds was awarded on August 23, 2012.

81.       Another Federal ACA grant application was submitted by the applicant, the California Health Benefit Exchange with an application due date of November 15, 2012 and an award date of January 17, 2013.  The grant project narrative was entitled California Application Level 2.0 Establishment Grant and Cooperative Agreement to Support Establishment of the Affordable Care Act's Health Insurance Exchanges.  The Federal grant package, included the mandatory document form SF-424 (with express certifications and express assurances), which was submitted to the U.S. Department of Health and Human Services and Office of Consumer Information and Insurance Oversight.  The funding opportunity number was listed as IE-HBE-12-001 with a

**COMPLAINT**

CFDA number of 93.525.  The period of performance was listed on the Federal grant application as January 1, 2013 to December 31, 2014.  The applicant was listed as the California Health Benefit Exchange with a DUNS # of 9685112090000.  The primary contact person was listed as Defendant Peter V. Lee with an email address of Katie.marcellus@hbex.ca.gov.  This Federal grant application contained express certifications and express assurances to "comply with all applicable requirements of all other Federal laws executive orders, regulations, and policies governing this program."  The express certification included the statement:

> *By signing this application, I certify (1) to the statements contained in the list of certifications**and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject them to criminal, civil or administrative penalties.  (U.S.Code, Title 218, Section 1001).

82.     In response to the submitted express certifications and express assurances given to the Federal government, $ 673,705,358 in Federal ACA funds were awarded on January 17, 2013.

83.     Section 1311(k) of the Affordable Care Act expressly mandates "Conflict -- An exchange may not establish rules that conflict with or prevent the application of regulations promulgated by the Secretary under this subtitle."

84.     Although the Affordable Care Act through Section 1311(k) clearly forbids an exchange from establishing "rules that conflict with or prevent the application of regulations promulgated by the Secretary under this subtitle", that is exactly what the California Health Benefit Exchange did.

85.     Defendant, the California Health Benefit Exchange and defendants wrote a Qualified Health Plan Contract that was published in July 2013.  This was the

14

**COMPLAINT**

contract that the California Health Benefit Exchange would require each health insurance issuer to enter into before the insurance company could participate in selling health insurance on the California Health Benefit Exchange which would go live on October 1, 2013.

86.     In both its 2014 and 2015 Qualified Health Plan contract, under Application of Laws, Section 1.02, the California Health Benefit Exchange established a rule which read, "in those instances where the Exchange has affirmatively elected to impose a requirement authorized by the Exchange in accordance with the California Affordable Care Act that exceeds a lesser threshold that may be applicable under the Affordable Care Act or other Federal Law, *the State law shall be deemed controlling*…"  (emphasis added).

87.     According to reports submitted to the Legislature and the Governor, the California Health Benefit Exchange went through $630.7 million in Federal ACA funds during the time period that its 2014 and 2015 Qualified Health Plan contract was in effect.

88.      Total California Health Benefit Exchange enrollment between October 1, 2013 and December 2015 varied.  Millions of people enrolled in and purchased health insurance from the California Health Benefit Exchange.  Based on calculations obtained from the California Health Benefit Exchange active member profiles' breakdowns, Covered California received $ 361,325,616.13 in $ 13.95 monthly participant fees of $ 13.95.  These monies were garnered by the California Health Benefit Exchange in 2013 to 2015, during the time period that their contracts directly violated Section 1311(k) of the Federal Affordable Care Act.

89.     As a recipient of Federal Affordable Care Act funds, the California Health Benefit Exchange is contractually and statutorily obligated to follow the Federal Affordable Care Act and its Regulations.

90.     Defendants directly violated Section 1311(k) of the Federal Affordable

15

**COMPLAINT**

Care Act by devising and enforcing a conflicting rule in its Model QHP contract that it made each health insurer sign before health insurance could be sold on through the California Health Benefit Exchange.  The Model QHP contracts were entered into and enforced with each health insurance issuer effective from before the "go live" date of October 1, 2013 through the end of 2015.

91.      Defendants knowingly violated the Section 1311(k) requirement that Defendants knew was material to the Government's payment decision. Nevertheless, Defendants submitted yet another Federal ACA grant application on November 1, 2013 (after the California Health Benefit Exchange's go live date of October 1, 2013).

92.       Defendants submitted a false claim of a Federal ACA grant application on November 1, 2013.  The submission date was listed as November 1, 2013 and an award date of January 22, 2014.  The grant project narrative was entitled California Application Level 2.0 Establishment Grant and Cooperative Agreement to Support Establishment of the Affordable Care Act's Health Insurance Exchanges.  The Federal grant package, included the mandatory document form SF-424 (with express certifications and express assurances), which was submitted to the U.S. Department of Health and Human Services and Office of Consumer Information and Insurance Oversight.  The period of performance was listed on the Federal grant application as January 1, 2014 to December 31, 2014.  The applicant was listed as the California Health Benefit Exchange with a DUNS # of 9685112090000.  The primary contact person was listed as Defendant Desi Malone.  This Federal grant application contained express certifications and express assurances to "comply with all applicable requirements of all other Federal laws executive orders, regulations, and policies governing this program."  The express certification included the statement:

> *By signing this application, I certify (1) to the statements contained in
> the list of certifications**and (2) that the statements herein are true,
> complete and accurate to the best of my knowledge.  I also provide the

16
**COMPLAINT**

required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject them to criminal, civil or administrative penalties.  (U.S.Code, Title 218, Section 1001).

93.     In response to the submitted express certifications and express assurances given to the Federal government, $155,076,686 in Federal ACA funds were awarded on January 22, 2014.

94.     On July 7, 2010, California Department of Managed Health Care ("DMHC") Director Ms. Lucinda Ehnes applied for the first of several Federal Affordable Care Act grants. The July 7, 2010 grant application was for $ 1 million, opportunity umber RFE-FD-10-999.  The grant was entitled Grants to States for Health Insurance Premium Review.  The offering agency was the Office of Consumer Information and Insurance Oversight.  The applicant organization was listed as the Department of Managed Health Care.  The CFDA number was 93.511.  The competition ID was ADOBE-FORMS-B.  The opportunity date was June 7, 2010 with an opportunity close date of July 7, 2010.  The agency contact was listed as Gladys Melendez-Bohler, grant specialist.  The application filing name was listed as CA application for Rate Review Grant.  The applicant was listed of the Congressional District of CA-005 and the Program/Project was listed as CA-A11.  The proposed project start date was listed as 8/9/2010.

95.     On the aforementioned Federal grant application, Ms. Ehnes expressly certified and gave express assurances, under paragraph 18, that she would "comply

**COMPLAINT**

with all applicable requirements of all other Federal laws executive orders, regulations, and policies governing this program." On July 7, 2010, Ms. Ehnes signed as the "authorized certifying official" directly underneath these assurances that appeared on the mandatory document, "Standard Form 424B (Rev. 7-97) Back." On this Federal grant application, Ms. Ehnes gave an express certification to the Federal government on mandatory document, Application for Federal Assistance SF-424, Section 21:

> *By signing this application, I certify (1) to the statements contained in the list of certifications**and (2) that the statements herein are true, complete and accurate to the best of my knowledge. I also provide the required assurances** and agree to comply with any resulting terms if I accept an award. I am aware that any false, fictitious, or fraudulent statements or claims may subject them to criminal, civil or administrative penalties. (U.S.Code, Title 218, Section 1001).

96.    Throughout the Project Abstract and Project Narrative submitted by Defendant Lucinda Ehnes, the requirements of the Patient Protection and Affordable Care Act (PPACA) and the importance of consistency with the PPACA was stressed throughout. Defendants Holly Pearson, Ed Heidig, Sandra Perez, Rick Martin, Lynne Randolph, Dennis Balmer, Debbie McKinney, Michael McClelland, Andrew George, Tim Lebas and Barbara Garrett appeared on the Federal ACA grant application. Defendants Gary Baldwin Maurren McKennan were listed as the primary contact persons. On August 16, 2010, in response to the express certifications and assurances given to the Federal government, the DMHC is awarded $ 1,000,000 in Federal Affordable Care Act funds.

97.    The False Claims Act's scienter requirement "require[s] no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B). Defendants satisfied The False

18

**COMPLAINT**

Claim's Act scienter requirement which defines "knowing" and "knowingly" to mean that a person has "actual knowledge of the information", "acts in deliberate ignorance of the truth or falsity of the information", or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

98.     Defendants had actual knowledge of the information that their 2008 balance billing prohibition was in direct conflict with the Federal Affordable Care Act and its Regulations.

99.     On June 28, 2010, The Federal Affordable Care Act regulations were published. These regulations mandated that emergency services ***must*** be treated in accordance with The Federal Affordable Care Act's provisions ***which legalize balance billing by out-of-network providers for the provision of emergency services***.  Federal Register, Vol. 75, No. 123, page 37194, column 2, second and last paragraph.  See also column 1 (starting at Emergency Services) and top of column 3 on page 37194.

100.     According to these Federal ACA Regulations, "If a plan or health insurance coverage provides any benefits with respect to emergency services in an emergency department of a hospital, the plan or issuer ***must*** cover emergency services in a way that is consistent with these interim final regulations."  (emphasis added).

101.     The Federal ACA Regulations published in June 2010 stress that the fact that the Affordable Care Act "does not prohibit balance billing"; that out-of-network providers are free to balance bill patients and that patients are responsible for balance billing amounts.

102.      These Federal Affordable Care Act Regulations which legalized balance billing became effective on August 27, 2010[1], nine days after he Federal Affordable Care Act regulations legalizing balance billing were published.

---

[1] Federal Register, Vol. 75, No. 123, page 37188.

**COMPLAINT**

103.    These Federal Affordable Care Act Regulations preempted Defendants' conflicting, October 15, 2008 balance billing ban.  Furthermore, these Federal Affordable Care Act Regulations became effective two weeks after California accepted $ 761 million in Federal Affordable Care Act funds in response to a Federal contract solicitation.[2]

104.    Eleven days after the DMHC was awarded the first million dollars of Federal ACA grant funds based on the July 7, 2010 Federal ACA grant application, Defendant Lucinda Ehnes wrote to Mr. Angoff of the Department of Health and Human Services with "actual knowledge" of concerns with Federal preemption of California's balance billing ban.  The False Claim Act's scienter requirement was satisfied.

105.    On September 9, 2010, Defendant Lucinda Ehnes submitted a Federal Affordable Care Act grant for $ 3.4 million to the Department of Health and Human Services, Office of Consumer Information and Insurance Oversight for an Affordable Care Act (ACA) -- Consumer Assistance Program Grant.  The applicant's name was the Department of Managed Health Care.  The CFDA number was 93.519 and the Federal solicitation opportunity open date was listed as July 22, 2010.  The due date for the Federal Affordable Care Act application was September 10, 2010.  The Opportunity number was listed as CA CAP 10 002 with a competition ID number of CA CAP 10 002 011720.  Elaine Paniewski was listed as the person to be contacted on matters involving the grant application.

106.    On the September 9, 2010 Federal ACA grant application for $ 3.4 million, Defendant Lucinda Ehnes and Defendant Charlaine Hamilton expressly

---

[2] Federal funding is " necessary to trigger" Federal preemption of state law.  *Norfolk v. Shanklin* 529 U.S. 344,361 (2000); *CSX v. Easterwood,* 507 U.S. 658 (1993). Federal contracts and grants are to be construed strictly in favor of the United States. *United States v. Grand River* 363 U.S. 229,235 (1960);*United States v. Union Pacific* 353 U.S. 112,116 (1957).

**COMPLAINT**

certified and gave express assurances, under Section 21 of the mandatory document, Application for Federal Assistance SF-424, Section 21 which read:

> *By signing this application, I certify (1) to the statements contained in the list of certifications**and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject them to criminal, civil or administrative penalties.  (U.S.Code, Title 218, Section 1001).

107.    On September 21, 2010, twelve days after submitting the aforementioned Federal Affordable Care Act application, Defendant Tim LeBas wrote to Mr. Angoff of the Department of Health and Human Services with "actual knowledge" of concerns with Federal preemption of California's balance billing ban, urging that "CALIFORNIA LAWS THAT PROVIDE GREATER CONSUMER PROTECTIONS SHOULD CONTROL."  The False Claim's Act scienter requirement was again satisfied.

108.    Defendants knew that California's governing law, the California Patient Protection and Affordable Care Act ("CPPACA"), was enacted on September 30, 2010 since the DMHC agency that they worked for was mentioned throughout. Defendants had actual knowledge that Section 2(e) of the CPPACA mandated that California "meet the requirements of the federal act and all applicable federal guidance and regulations."  Defendants knew that "Federal Act" was defined in

Section 5(d) of the CPPACA as the Federal Patient Protection and Affordable Care Act (Public Law 111-148), as amended by the federal Health Care and Education Reconciliation Act of 2010 (Public Law 111-152), and any amendments to, or regulations or guidance issued under, those acts."

109.    On October 7, 2010, Defendant Lucinda Ehnes sent a letter to the National Association of Insurance Commissioners with "actual knowledge" of her concerns with Federal preemption of California's balance billing ban.  The False Claim's Act scienter requirement was therefore satisfied.

110.    According to the DMHC's 2014 annual report, the DMHC received $ 9.2 million in Consumer Assistance Program Federal Affordable Care Act funds which were to be used for educating the public about the Federal Affordable Care Act and their rights and obligations.  Instead, the Defendants intentionally misled the public with their Affordable Care Act Toolkits which misrepresent that balance billing by emergency providers is illegal when, in actuality, the Federal Affordable Care Act legalizes balance billing by emergency care providers.

111.    The CMS.gov website documents that the DMHC, through Defendants' actions and misrepresentations, received at least $ 3,751,621 in Rate Review Federal Affordable Care Act funds.[3]

---

[3] $ 1 million on August 16, 2010; $ 2,162,121 with the California Department of Insurance on September 20, 2011 and $ 589,500 on September 19, 2014.

22

**COMPLAINT**

112.     Defendants had actual knowledge that material statutory and regulatory (the 2010 Federal Affordable Care Act and its Regulations) mandated that emergency services ***must*** be covered in a way "that is consistent with these interim final regulations" that legalized balance billing by out-of-network providers.  Furthermore, Defendants had actual knowledge that the 2010 California Patient Protection and Affordable Care Act mandated compliance with the Federal Affordable Care Act and its Regulations.  Defendants had actual knowledge of the material contractual requirements of each and every Federal Affordable Care Act grant application for which they gave express certifications and assurances.

113.     Nevertheless, Defendants knowingly chose to violate the aforementioned statutory, regulatory and contractual requirements by enforcing the DMHC's preempted and superseded 2008 balance billing ban prohibition.  On July 13, 2011, Defendants filed its first balance billing prosecution against Plaintiff in its "case of first impression".  For its prosecutorial debut, Defendants singled out Plaintiff as the first physician out of 1.76 million providers who had previously balance billed. Defendants alleged that Plaintiff had been illegally balance billing patients even though both the Federal Affordable Care Act and the California Patient Protection and Affordable Care Act legalized balance billing.  During the trial, Defendant Christopher Lee intentionally misrepresented to the trial Court that the Federal Affordable Care Act Regulations had nothing to do with balance billing.

23
**COMPLAINT**

114.    Defendant Kamala Harris was well aware of the aforementioned Defendants' illegal enforcement actions since Plaintiff personally informed her when Defendant Kristin Door assaulted Plaintiff in the hallway of the Stanley Mosk Courthouse.  Furthermore, Defendant Kamala Harris spearheaded a separate discriminatory enforcement balance billing prosecution initiated by the Medical Board of California.

115.    Since Plaintiff's balance billing prosecution, several other health care providers, including individual physicians, have been investigated and prosecuted for balance billing including Southwest Trauma Medical Associates, Inc; North Coast Pathology Medical Group; San Francisco General Hospital Medical Group; San Francisco General Hospital; Scripps Mercy Hospital Chula Vista and Scripps Memorial Hospital.  Defendants initiated all of these illegal balance billing ban prosecutions after they received millions of dollars in Federal Affordable Care Act funds, intentionally misrepresenting to the Federal government that they were complying with the Federal Affordable Care Act and its Regulations.

116.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1) and knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved in violation of 31 U.S.C. § 3729(a)(2).  Defendants made a misrepresentation which constituted a false or fraudulent claim since it failed to disclose Defendants' violation

of a material statutory (Section 1311(k) violation of the Affordable Care Act) and contractual requirements (based on express certifications and assurances contained in each Federal ACA application).

### FIRST CAUSE OF ACTION
### For Presentation of False Claims
### (31 U.S.C. § 3729(a)(1)(A))

117.    Qui Tam Plaintiff repeats and realleges paragraphs 1 through 116 as though fully set forth herein.

118.    As alleged herein, defendants knowingly presented, or caused to be presented, multiple false or fraudulent claims for payment or approval to the United States.

119.    As a direct and proximate result of defendants' conduct alleged herein, the United States incurred damages under the False Claims Act in an amount subject to proof at trial but reasonably in excess of $10,000,000.

### SECOND CAUSE OF ACTION
### For Making or Using False Record or Statement
### to Cause False Claim to be Presented
### (31 U.S.C. § 3729(a)(1)(B))

120.    Qui Tam Plaintiff repeats and realleges paragraphs 1 through 116 as though fully set forth herein.

121.    As alleged herein, defendants knowingly made, used, or caused to be made or used, multiple false records or statements material to multiple false or fraudulent claims to the United States.

122.    As a direct and proximate result of defendants' conduct alleged herein, the United States incurred damages under the False Claims Act in an amount subject to proof at trial but reasonably in excess of $10,000,000.

### THIRD CAUSE OF ACTION
### For Payment by Mistake of Fact

**COMPLAINT**

123.    Qui Tam Plaintiff repeats and realleges paragraphs 1 through 116 as though fully set forth herein.

124.    This is claim for monies paid by the United States to the defendants as a result of mistaken understandings of fact.

125.    The United States, acting in reasonable reliance on the truthfulness of tdefendants' certifications and representations as alleged herein, paid the defendants certain sums of money to which they were not entitled, and the defendants are thus liable to account and pay such amounts, which are to be determined at trial, to the United States.

## FOURTH CAUSE OF ACTION
### For Unjust Enrichment

126.    Qui Tam Plaintiff repeats and realleges paragraphs 1 through 116 as though fully set forth herein.

127.    This is a claim for recovery of monies by which the defendants have been unjustly enriched.

128.    By directly or indirectly obtaining funds from the United States to which defendants were not entitled, the defendants were unjustly enriched, and are liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

## FIFTH CAUSE OF ACTION
### For Recoupment of Overpayments

129.    Qui Tam Plaintiff repeats and realleges paragraphs 1 through 116 as though fully set forth herein.

130.    This is a claim for recoupment, for the recovery of monies unlawfully paid by the United States to the defendants contrary to statute or regulation.

131.    The United States paid the defendants certain sums of money to which

**COMPLAINT**

they were not entitled, and the defendants are thus liable under the law of recoupment to account and return such amounts, which are to be determined at trial, to the United States.

## **PRAYER FOR RELIEF**

WHEREFORE, Qui Tam Plaintiff-Relator Dr. Jeannette Martello, on behalf of the United States, prays for judgment to be entered in favor of the United States and against defendants as follows:

1.  On the First and Second Causes of Action, under the False Claims Act, for the amount of the United States' damages, trebled as required by law;

2.  On the First and Second Causes of Action, under the False Claims Act, for civil penalties as required by law;

3.  On the Third, Fourth and Fifth Causes of Action, for the damages sustained and/or amounts by which the defendants were unjustly enriched, or by which defendants illegally retained monies to which they were not otherwise entitled;

4.  For prejudgment interest on all amounts as permitted by law; and

5.  For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED:

Dated: July 13, 2017

By_____/S/ Daniel A. Crawford
CRAWFORD LAW GROUP
Attorneys for ex rel. Plaintiff,
Dr. Jeannette Martello

**COMPLAINT**